Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
332 North Second Street
San Jose, California  95112
Telephone (408) 298-2000
Facsimile  (408) 298-6046
Email:  tanya@moorelawfirm.com

Attorneys for Plaintiff
Ronald Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE, | No. 1:14-cv-01402-DAD-SAB |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE SUMMARY ADJUDICATION** |
| vs. | |
| MILLENNIUM ACQUISITIONS, LLC, et al., | |
| Defendants. | Date:      January 19, 2016<br>Time:      9:30 a.m.<br>Courtroom:   5 (Fresno Courthouse)<br>Honorable Dale A. Drozd |

**TABLE OF CONTENTS**

I. Introduction ..................................................................................................................1

II. No evidence is offered that puts Plaintiff's disability or use of a wheelchair at issue ......1

    A. Defendants omit the fact that the previously undisclosed video surveillance, spanning 77 hours and two months, consistently shows Plaintiff using a wheelchair when in public; two instances lasting less than a few minutes showing Plaintiff walking do not put Plaintiff's disability under the ADA at issue or contradict his consistent testimony ................................................................3

    B. Defendants offer no authority that a prescription to use a wheelchair is required to establish a disability, nor any evidence that Plaintiff does not need a wheelchair to ameliorate his pain and eliminate his risk of falling ..................6

    C. Plaintiff's ability to lift his wheelchair into his vehicle is not at issue ........................7

    D. There is no evidence submitted that Plaintiff rides the motorcycles allegedly owned by him and his estranged wife; only an inadmissible hearsay community property declaration filed by Plaintiff's estranged wife ..............7

    E. Testimony of Dr. Miller is inadmissible expert testimony because he was not disclosed as an expert; even so, his testimony is meaningless and contradicts his own findings which he attaches as an exhibit to his declaration ................................................................................................................8

    F. Even if it were admissible, none of the evidence offered by Defendants puts at issue whether Plaintiff is disabled under the ADA or that he needs a wheelchair for mobility .........................................................................................10

III. There is absolutely no evidence that the High Speed Rail will in fact reach fruition, and mere speculation is inadequate to establish mootness ................................12

IV. Credibility attacks based only on testimony that no one remembers seeing Plaintiff at the Gas Station are insufficient to dispute Plaintiff's testimony and evidence .........................................................................................................................13

V. The allegations that there is a "scheme" to defraud the Court are without evidence or merit, and are irrelevant to the determination of Plaintiff's motion .............14

VI. Plaintiff's allegations regarding the inaccessibility of the Gas Station are undisputed .....................................................................................................................15

VII. Conclusion ..................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................. 12

*Baughman v. Walt Disney World Co.*,
  685 F.3d 1131 (9th Cir. 2012) .................................................................................. 11

*Bodett v. CoxCom, Inc.*,
  366 F.3d 736 (9th Cir. 2004) .................................................................................... 14

*Bragdon v. Abbott*,
  524 U.S. 624 (1998) .............................................................................................. 5, 12

*D'Lil v. Best W. Encina Lodge & Suites*,
  538 F.3d 1031 (9th Cir. 2008) .................................................................................. 14

*Kittok v. Leslie's Poolmart, Inc.*,
  687 F. Supp. 2d 953 (C.D. Cal. 2009) ...................................................................... 14

*Knox v. SEIU, Local 1000*,
  132 S. Ct. 2277 (2012) .............................................................................................. 13

*Langer v. Adriatic Vacation Club, Inc.*,
  2015 U.S. Dist. LEXIS 143398 (C.D. Cal. Oct. 21, 2015) ....................................... 14

*Lee v. Ballesteros*,
  2015 U.S. Dist. LEXIS 106181 (E.D. Cal. Aug. 12, 2015) ...................................... 11

*Molski v. Evergreen Dynasty Corp.*,
    500 F.3d 1047 (9th Cir. 2007) .................................................................................... 14

*Moore v. Chase, Inc.*,
    E.D. Cal. Case No. No. 1:14-cv-01178-SKO ..................................................... 8

*Moore v. Saniefar, et al.*,
    E.D. Cal. Case No. 1:14-cv-01067-SKO-KJM................................................... 3, 4

*Rush v. Denco Enters.*,
    857 F. Supp. 2d 969 (C.D. Cal. 2012) ............................................................... 12

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*,
    690 F.2d 1235 (9th Cir. 1982) .......................................................................... 12

*Shane v. Greyhound Lines, Inc.*,
    868 F.2d 1057 (9th Cir. 1989) ............................................................................ 9

**Statutes**

42 U.S.C. § 12101 Note, Findings and Purposes of ADA Amendments Act of
    2008................................................................................................................... 11

42 U.S.C. § 12102(2) ............................................................................................. 11

42 U.S.C. § 12102(4) ............................................................................................. 11

**Other Authorities**

Fed. R. Evid. 701 ................................................................................................... 11

Fed. R. Civ. P. 37................................................................................................... 9

I.      **Introduction**

Defendants only contest whether Plaintiff is disabled and/or whether he needs to use a wheelchair; whether Plaintiff visited the Gas Station; and whether the maybe-someday condemnation of the Gas Station as a result of the High Speed Light Rail moots Plaintiff's claims. The inaccessible conditions at the Gas Station are not meaningfully disputed. In their efforts, Defendants offer largely inadmissible, previously undisclosed evidence. Even so, their inadmissible evidence, and attacks on Plaintiff and his counsel, do nothing to create any genuine issues of material fact that would preclude summary judgment in favor of Plaintiff.

II.     **No evidence is offered that puts Plaintiff's disability or use of a wheelchair at issue**

Defendants contest Plaintiff's disability and/or need to use a wheelchair based on five "facts":

1. Sub rosa video surveillance – *never* disclosed to Plaintiff in this action – shows Plaintiff briefly walking in two instances in his yard and at his neighbor's;

2. Plaintiff has no prescription for a wheelchair;

3. Plaintiff can easily lift his wheelchair into his vehicle;

4. Plaintiff's wife, who was just retained by defense counsel in a dissolution action, filed a Property Declaration asserting that the community owns four motorcycles; and

5. A doctor who met with Plaintiff *once* in 2010, who was *never disclosed as an expert witness*, who *never* reviewed Plaintiff's medical records, who was asked to consult to *manage* Plaintiff's chronic pain, who attached a report chronicling Plaintiff's significant pain and "antalgic gait"[1] while reaching for walls, whose impression was that Plaintiff suffered from "chronic low back pain," who approved of the use of an intrathecal pump,"[2] testified on January 5, 2016 (5-1/2 years after his single visit

---

[1] Defined as a "limp adopted so as to avoid pain on weight bearing structures, characterized by a very short stance phase." http://medical-dictionary.thefreedictionary.com/antalgic+gait (last visited January 6, 2016).

[2] An "intrathecal drug delivery, or 'pain pump,' is a method of giving medication directly to your spinal cord. The system uses a small pump that is surgically placed under the skin of your abdomen and

1 with Plaintiff) that although Plaintiff claimed he needed a wheelchair, the wheelchair
2 was not "medically necessary;" and he never opined on Plaintiff's hydrocephalus

3 Even if *all* the evidence allegedly supporting the above facts was admissible, it is
4 insufficient to put Plaintiff's disabilities (chronic pain and hydrocephalus) and use of a
5 wheelchair at issue and create a disputed material fact.

6 That Plaintiff may walk on rare occasion is irrelevant to whether or not he has a
7 disability or needs a wheelchair. Further, there is nothing in the ADA that requires that an
8 individual have a prescription for a wheelchair in order to establish a disability or even the need
9 to use a wheelchair. And the existence of motorcycles which are community property does not
10 prove or establish anything, especially where the underlying document is inadmissible and
11 Plaintiff hasn't ridden the now inoperable vehicles since his disability. Lastly, even if Dr.
12 Miller's undisclosed, purely conclusory expert testimony was admissible, and even if it did not
13 conflict with what his attached letter claimed about Plaintiff which firmly establishes Plaintiff's
14 chronic pain, that a wheelchair is not "medically necessary" has no meaning when evaluating a
15 disability under the ADA. The relevant question is only whether Plaintiff's conditions – chronic
16 pain and hydrocephalus (nowhere disputed by Defendants) – substantially limit his ability to
17 walk, and whether a wheelchair is therefore appropriate to mitigate the effects of these
18 conditions to afford Plaintiff mobility. As to this last issue, again, Defendants offer no evidence.

19 What the Court is left with is Plaintiff's testimony about his disability, Plaintiff's wife's
20 testimony about his disability, and Plaintiff's expert physician's testimony about his disability –
21 all of which make clear that Plaintiff is substantially limited (not fully precluded) in his ability
22 to walk and that without a wheelchair, he suffers a great deal of pain and the risk of falling.
23 These facts are undisputed by Defendants.  Plaintiff is disabled under the ADA and his
24 wheelchair is necessary to address his disabilities.

25

26 ---
delivers medication through a catheter to the area around your spinal cord – similar to an epidural that women
27 may have during childbirth. A pain pump may be a treatment option if all other traditional methods have failed to
relieve your long-term symptoms. Because the medication is delivered directly to the spinal cord, your symptoms
28 can be controlled with a much smaller dose than is needed with oral medication."
http://www.mayfieldclinic.com/PE-PUMP.htm#.Vo05MfkrJLk (last visited January 6, 2016) (emphasis added).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

Page 2

**A. Defendants omit the fact that the previously undisclosed video surveillance, spanning 77 hours and two months, consistently shows Plaintiff using a wheelchair when in public; two instances lasting less than a few minutes showing Plaintiff walking do not put Plantiff's disability under the ADA at issue or contradict his consistent testimony**

Not only is the sub rosa video surveillance not admissible because neither it nor the private investigators were ever disclosed by Defendants in this action[3], but Defendants seek to deceive the Court by omission. This video surveillance was taken, and produced to Plaintiff, in a separate action.[4] That surveillance spanned 77 hours from March 19, 2015 to May 18, 2015.[5]

There are only two occasions showing Plaintiff walking unassisted spanning the two months and more than 77 hours of surveillance when Plaintiff 1) was walking *in his own yard* (presumably well known to him) without a cane or wheelchair for about two minutes on May 4, 2015, and 2) on May 17, 2015 is shown standing in his driveway near his vehicle talking to his neighbor for less than 30 seconds, then driving to the neighbor's driveway where he walked for only a few steps to the rear of his vehicle, where he had support, and then walked along his vehicle to the driver's door where he also had support. Suppl. Moore Decl., ¶ 4. These videos do not come close to even *suggesting* – let alone *establishing* – that Plaintiff is not disabled or that he does not need a wheelchair to travel more than short distances. Instead, Plaintiff's testimony, again, is that he *can* walk unassisted for short distances, but that even then, he endures pain and risks falling. See Pl's Decl., Dkt. 51-2 at ¶ 4. Plaintiff even confirms that during the May 4, 2015 video of him walking (Exh. A to Raymond Franco Decl.), he *was* experiencing pain and *did* risk falling. Suppl. Moore Decl., filed herewith, ¶ 7.

---

[3] *See* separate evidentiary objections to the Raymond Franco Declaration, filed herewith.

[4] *Moore v. Saniefar, et al.*, E.D. Cal. Case No. 1:14-cv-01067-SKO-KJM; *see* Supplemental Declaration of Tanya E. Moore, filed herewith ("Suppl. Moore Decl."), ¶ 2. Depositions of the investigators were taken only in the *Saniefar* action, but are used here in the event the Court admits the testimony.

[5] Suppl. Moore Decl., ¶ 3, Exh. A (excerpts of deposition testimony of private investigator Raymond Franco regarding days and duration of the surveillance; the investigator could not provide the hours for one of the surveillance dates, so those hours are not even included in the total).

All the other video surveillance shows Plaintiff using a wheelchair when out in public, putting his wheelchair in the back of his vehicle, then walking to the driver's door with the assistance of his cane. Both private investigators who observed Plaintiff for the two months testified that his routine when travelling in public was consistent:

> Q. And then what did he proceed doing after he took the wheelchair out of his Suburban?
> A. To my recollection, Mr. Moore used a cane to get from the driver's seat to the rear of the vehicle. He placed his cane, after retrieving his wheelchair out of the rear of the vehicle, placed his cane inside the vehicle and got into his wheelchair.
> Q. Okay. And then what did he do after he got into his wheelchair?
> A. He wheeled himself into the building.

Raymond Franco Depo. at 43:1-10 (Exh. B to Suppl. Moore Decl.)

> Q. Doing everything basically the same thing?
> A. Same thing. Same way.
> Q. When you say, same way, what do you mean by that?
> A. He exits the vehicle, retrieves the wheelchair from the rear of the vehicle and then wheels himself into the building. Then, when he's finished, he wheels himself out, places the wheelchair into the back of the vehicle, enters the vehicle and departs.

Raymond Franco Depo. at 66:4-10 (Exh. B to Suppl. Moore Decl.)

> Q. Other than when Mr. Moore arrived at his house and goes and leaves his Suburban and goes, you assume, inside his home, because he's going out of your sight, right? Have you ever seen him, in any public location whatsoever, office building, Alamo Club, whatever else, where he would get out of his Suburban and not use his wheelchair?
> A. No.

Raymond Franco Depo. at 72:10-18 (Exh. B to Suppl. Moore Decl.)

> Q. By the way, have you seen Mr. Moore walk into any public establishments without using a wheelchair?
> A. In my days of watching him, no I have not.

Nick Franco Depo[6]. at 24:17-20 (Exh. C to Suppl. Moore Decl.)

---

[6] Nick Franco was also an investigator in the *Saniefar* matter. Suppl. Moore Decl., ¶ 6.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Page 4

      A.  If I understand you correct, your question, he did use his cane to get -- after he was done loading his wheelchair, he did use his cane to get from the back of the SUV to the driver's side. As far as the days that I would see, it was all the same routine of doing what he did, from loading his wheelchair to get into the driver's seat of the SUV.

Nick Franco Depo. at 21:20-22:1 (Exh. C to Moore Decl.)

      The two occasions relied upon by Defendants, and the other probable isolated instances of Plaintiff walking short distances without assistance, neither establish that Plaintiff is not disabled under the ADA nor that he need not use a wheelchair. And Plaintiff confirms he was in pain and risked falling. Suppl. Pl's Decl., ¶ 7. Rather, the surveillance conclusively establishes Plaintiff's disability and obvious need for a wheelchair. He was under surveillance for two months, unbeknownst to him. During all but two very short and isolated moments in the over 77 hours of surveillance, he was always seen using his wheelchair in public, just as he testified. It is easy to see why Defendants would omit this footage – there is no reason why a non-disabled (or disabled) man, who has no reason to believe he is under surveillance, would *choose* to endure the difficulties associated with using a wheelchair rather than walk if in fact he could do so without pain or the risk of falling. This suggestion falls well outside any reality-bearing universe. There can be no more damning evidence to Defendants' argument that Plaintiff is not disabled or that he needs to use a wheelchair than the testimony of *their* private investigators based on 77 hours of surveillance over two months that Plaintiff consistently uses a wheelchair.

      And Defendants continually ignore Plaintiff's relevant testimony that some days are better than others for him in terms of pain, which is utterly consistent with the two isolated instances of him walking the very short distances seen. Plaintiff's testimony is not that he cannot walk, but that doing so causes him a great deal of pain, and he risks falling because of his hydrocephalus. That he occasionally walks does nothing to put his disability at issue. "In the end, the disability definition does not turn on personal choice. When significant limitations result from the impairment, the definition is met even if the difficulties are not insurmountable." *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998).

      The videos therefore create no disputed fact. The definition of a disability does not turn on whether Plaintiff can never walk, or whether he can overcome his disability at times. Its

1 broad construction in favor of coverage focuses on whether he is substantially limited in his
2 ability to walk. If it says anything of relevance at all, the surveillance demonstrates that Plaintiff
3 needs the use of a wheelchair to travel anything but very short distances (such as to and from
4 the rear of his vehicle, at which point he uses his cane).

5    Defendants' argument comes down to their retrograde belief that no matter the pain or
6 risk of injury to Plaintiff, that he should always buck up and walk unassisted, or just use a cane.
7 Yet they offer not one whit of evidence that using a cane will address Plaintiff's chronic pain or
8 risk of falling when having to travel about in public where there is anything but a short distance.

9    **B.    Defendants offer no authority that a prescription to use a wheelchair is
10         required to establish a disability, nor any evidence that Plaintiff does not
11         need a wheelchair to ameliorate his pain and eliminate his risk of falling**

12    Plaintiff, his estranged wife, and his physician expert have all testified that Plaintiff is
13 substantially limited in his ability to walk, and that he uses a wheelchair to ameliorate his
14 chronic pain and minimize his risk of falling due to hydrocephalus. These facts are not
15 controverted by Defendants. Instead, they appear to suggest that in order to qualify as a person
16 with a disability, or to establish he needs a wheelchair, Plaintiff must produce a prescription.
17 But they offer no authority for this proposition, and none can be identified by Plaintiff.

18    Ironically, as set forth above, even Raymond Franco, the private investigator relied upon
19 by Defendants, testified that he *always* witnessed Plaintiff using his wheelchair when travelling
20 in public. Plaintiff's medical conditions are not anywhere disputed by Defendants, nor can they
21 dispute that Plaintiff in fact uses a wheelchair since their own video surveillance clearly
22 documents this fact. Plaintiff's expert, Dr. Levin, testified that Plaintiff's medical records
23 independently reveal that Plaintiff has been using a wheelchair since 2005 as a result of his
24 chronic pain and hydrocephalus. Levin Decl., Dkt. 51-6 at ¶ 12. Defendants suggest that this is a
25 disputed fact, but none of the evidence they cite actually disputes this issue. *See* Plaintiffs'
26 Reply to Defendants' Response to the Separate Statement, filed herewith ("Reply to SUF"), No.
27 4.
28

While Defendants attempt to argue that Plaintiff does not need a wheelchair, they simply offer no evidence to support this position. Instead, they offer evidence that Plaintiff does not dispute – that he can walk short distances (nearly always with his cane or the use of other stabilizing options), depending upon the degree of pain he is experiencing. Reply to SUF No. 1. Nor can they refute Plaintiff's testimony, his wife's testimony, and his expert's testimony that while Plaintiff can walk, doing so causes him pain and creates a risk that he will fall. This fact is made clear by the months of sub rosa investigation showing Plaintiff always using a wheelchair when going out in public – there is no other rational explanation for his use of the wheelchair other than he needs it to mitigate his pain and prevent him from falling. The fact that on rare occasions Plaintiff endures the pain and the risk of falling does nothing to call into question his need to use a wheelchair as a result of his hydrocephalus and chronic pain. Nothing is being "concocted" as argued vacuously by Defendants. Rather, Defendants take the position that Plaintiff should endure significant pain and risk falling since they never dispute that Plaintiff suffers from chronic pain and hydrocephalus. This position is untenable under the ADA.

### C. Plaintiff's ability to lift his wheelchair into his vehicle is not at issue

Defendants go to great lengths to point out that Plaintiff can lift his wheelchair into and out of the rear of his vehicle (and attendant use of a cane before and after unloading his wheelchair) – a fact Plaintiff himself testified to. But there is no apparent relevance to this fact, and it in no way calls into question Plaintiff's disability.

### D. There is no evidence submitted that Plaintiff rides the motorcycles allegedly owned by him and his estranged wife; only an inadmissible hearsay community property declaration filed by Plaintiff's estranged wife

Defendants allege that "Plaintiff [sic] disability is not serious enough to preclude him from owning a motorcycle. One would think that if he could balance himself on a motorcycle, he could walk into a gas station without the need of a wheelchair." Opp., Dkt. 53 at 4:20-22. Apparently, disabled persons cannot own motorcycles, and if they do, they must ride them. And if they ride them, that must also mean they can walk. This is seriously flawed, and discriminatory, logic, and reflects a larger concern of how disabled persons are viewed by the

1 public. And it is consistent with the logical fallacies and unsupported argumentation which form
2 the backbone of Defendants' opposition.

3 In support of this tortured theory, Defendants offer not the testimony of Lynn Moore
4 (who has already provided testimony in opposition to Plaintiff's motion), but a community
5 property declaration filed in a dissolution action by defense counsel here, H. Ty Kharazi, who
6 conveniently took up representation of Ms. Moore somewhere between December 31, 2015 and
7 January 4, 2016.[7] This property declaration is inadmissible for the truth of any matter asserted
8 therein under any rule of evidence (see Evidentiary Objections to the Property Declaration, filed
9 herewith). This is particularly true since Defendants clearly had access to Ms. Moore to provide
10 testimony on this issue.

11 Despite the inadmissibility of this document and the strong discriminatory overtones of
12 Defendants' argument, Plaintiff confirms that he has not ridden any of these motorcycles since
13 he became disabled; in fact, none of the motorcycles are even operable. Supplemental Decl. of
14 Plaintiff filed herewith, ¶¶ 2-6.

15 **E.      Testimony of Dr. Miller is inadmissible expert testimony because he was not**
16 **disclosed as an expert; even so, his testimony is meaningless and contradicts**
17 **his own findings which he attaches as an exhibit to his declaration**

18 Defendants have not disclosed a single medical expert, including Dr. Miller. Suppl.
19 Moore Decl., ¶ 9, Exh. E (Defendants' Expert Witness Disclosure). Dr. Miller is testifying that
20 Plaintiff's use of a wheelchair is not "medically necessary." This is clearly expert testimony,
21 well beyond that of a treating physician (if Dr. Miller can even be considered a treating
22 physician since he functioned in a consultative capacity only and saw Plaintiff only once).

---

[7] Plaintiff filed a motion for sanctions against Mr. Kharazi in this action as well as the matter of *Moore v. Chase, Inc.*, E.D. Cal. Case No. No. 1:14-cv-01178-SKO, Dkt. 82. One of the bases for the motion is that Defendants in both actions designated Ms. Moore as a witness, and then Mr. Kharazi offered to represent her for free in a dissolution action against Plaintiff. Suppl. Moore Decl., ¶ 7. In their opposition to the motion for sanctions in the *Chase* action filed on January 5, 2016, Defendants offered the Declaration of Lynn Moore who testified that "as of December 30, 2015, I had not yet retained Mr. Kharazi as my attorney." Suppl. Moore Decl., Exh. D, ¶ 4.That Declaration was curiously signed on December 31, 2015. *Id.* On January 4, 2016, Mr. Kharazi filed a dissolution action as counsel for Lynn Moore, Defendants' witness, as evinced by the community property declaration filed on January 4, 2016 offered as evidence here by Defendants (Exh. 12 to Kharazi Decl.).

Defendants are therefore precluded by Rule 37 of the Federal Rules of Civil Procedure and Federal Rules of Evidence from introducing his expert testimony which should therefore be stricken in its entirety.[8]

Even if Dr. Miller's testimony were to be considered, he testified only that a wheelchair is not "medically necessary" for Plaintiff. Dr. Miller does not indicate what "medically necessary" means. Dr. Miller provides not a single fact upon which he reaches this conclusion. His declaration is therefore insufficient. "Because the affidavit contains only conclusory allegations, not backed up by statements of fact, it cannot defeat a motion for summary judgment." *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989).

"Medically necessary" has no relationship to the definition of disability under the ADA which only requires that Plaintiff be "substantially limited in his ability to walk." "Medically necessary" suggests that Plaintiff must be completely unable to walk ("necessary"). No opinion was provided as to whether a wheelchair was "medically appropriate." By contrast, the only admissible testimony on this subject is from Dr. Levin who discusses this issue at length after a review of Plaintiff's medical records dating back to 2005, concluding that Plaintiff's use of a wheelchair to ameliorate pain and the risk of falling is appropriate. Levin Decl., Dkt. 51-6.

And Dr. Miller certainly went to great lengths in his report at the time of his meeting with Plaintiff to set forth the chronic pain Plaintiff suffers from and that he witnessed Plaintiff having difficulty walking. Dr. Miller made the following findings in his June 2010 letter:

- Plaintiff was referred to him *only* to help with management of chronic pain (i.e., not hydrocephalus)
- Dr. Miller met with Plaintiff one time – on June 4, 2010
- Pain questionnaire reveals that Plaintiff's pain runs between a 6 and a 10

---

[8] Plaintiff has filed herewith separate evidentiary objections to the testimony of Dr. Miller on multiple significant grounds. Plaintiff is also very concerned about Dr. Miller's breach of the physician-patient confidentiality requirement, and defense counsel's encouragement and facilitation of this breach. Dr. Miller was not deposed, and had no legitimate reason to offer confidential information to Defendants which has now been published by the Court through his declaration and made available to the public. Suppl. Moore Decl., ¶ 10. How Mr. Kharazi elicited this targeted testimony from Dr. Miller is and questioned by Plaintiff.

1     • Musculoskeletal examination shows he has an antalgic gait [defined above] reaching for
2        the walls to hold on at times with "quite a dramatic flare"
3     • Plaintiff evidenced chronic pain behavior with Iatrogenic addiction
4     • Plaintiff evidence chronic low back pain
5     • Approval for the placement of an intrathecal pump if opiate tapering ineffective
6 Dkt. 53-7, pp. 4-7 (ECF numbering) (Exh. 1 to Miller Decl.).

7     None of this was mentioned in Dr. Miller's declaration. Dr. Miller met with Plaintiff once, and his Exhibit 1 letter reflects that he did not review any of his medical records. Dr. Miller is wholly unqualified to opine as to whether or not Plaintiff needs to use a wheelchair now or ever. In fact, Plaintiff's expert, Dr. Levin, who reviewed medical records subsequent to Dr. Miller's examination of Plaintiff, pointed out that Plaintiff *did* in fact discontinue all use of opiates, and that despite this fact, *his pain continues*. Levin Decl., Dkt. 51-6, ¶ 9. This fact alone makes clear that Dr. Miller's opinion – which predates Plaintiff's discontinuance of opiates – is irrelevant because it cannot consider the actual outcome of Plaintiff's cessation of opiate use.

15     Dr. Miller's testimony is inadmissible. And it is in any event unhelpful. No definition of "medically necessary" is provided in the conclusory opinion provided by Dr. Miller. In fact, his declaration hardly establishes his qualifications to provide *any* opinion on whether or not Plaintiff needs to use a wheelchair. Other than claiming he is a neurologist, Dr. Miller provides no qualifying information whatsoever, nor does he provide any foundation for how he reached this opinion or what factors he considered. Dr. Miller does not even discuss Plaintiff's hydrocephalus. Fundamentally, Dr. Miller's inadmissible testimony provides no genuine issue of material fact because it introduces no useable information.

23     **F.    Even if it were admissible, none of the evidence offered by Defendants puts at issue whether Plaintiff is disabled under the ADA or that he needs a wheelchair for mobility**

26     In his moving papers, Plaintiff set forth the requirements for establishing a disability under the ADA. Dkt. 51-1 at 6:21-7:28. As a brief recap, the definition of "disability" is to be "construed in favor of broad coverage of individuals under this Act, to the maximum extent

permitted by the terms of this Act." 42 U.S.C. § 12102(4). Under the ADA, an individual is disabled if he is substantially limited in his ability to walk. 42 U.S.C. § 12102(2). Congress *unequivocally* declared – in response to court decisions focusing on the extent of a person's disability – "that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." 42 U.S.C. § 12101 Note, Findings and Purposes of ADA Amendments Act of 2008, Pub. L. 110-325, § 2, Sept. 25, 2008, 122 Stat. 3553 ADA Amendments Act of 2008.

Here, Plaintiff offers the unrefuted testimony of Dr. Levin, who reviewed all of Plaintiff's medical records, and found that they reflect both a diagnosis of hydrocephalus as well as chronic pain which require Plaintiff to use a wheelchair to ameliorate his pain and minimize his risk of falling. Levin Decl., Dkt. 51-7, ¶¶ 6-14. Plaintiff also offers his own testimony establishing his disability. Pl's Decl., Dkt. 51-2 at ¶ 4-6. "Lay witnesses may testify as to what they saw or felt relating to their medical needs or condition, Fed. R. Evid. 701." *Lee v. Ballesteros*, 2015 U.S. Dist. LEXIS 106181, at *3 (E.D. Cal. Aug. 12, 2015).

At one point, Defendants seem to posit that although Plaintiff may indeed be disabled, he need not use a wheelchair because he *can* walk. Therefore, none of the conditions at the Gas Station pose real access problems for him. Opp., Dkt. 53 at 9:10-13. The Ninth Circuit has vehemently rejected such an argument:

> After all, a paraplegic <u>can</u> enter a courthouse by dragging himself up the front steps [citation omitted] so lifts and ramps would not be "necessary" under Disney's reading of the term. And no facility would be required to provide wheelchair-accessible doors or bathrooms, because disabled individuals could be carried in litters or on the backs of their friends. That's not the world we live in, and we are disappointed to see such a retrograde position taken by a company whose reputation is built on service to the public.

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134-35 (9th Cir. 2012) (emphasis in original). But this is exactly the approach argued by Defendants. Because Plaintiff *can* walk, he must choose to endure the pain and risk associated with doing so in order that Defendants need not remove barriers to wheelchair access. As argued in his moving papers, the Supreme Court has made clear that "[i]n the end, the disability definition does not turn on personal choice. When significant limitations result from the impairment, the definition is met even if the

1 difficulties are not insurmountable." *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998). Defendants
2 never dispute that Plaintiff has chronic pain or hydrocephalus. No enlightened analysis of these
3 disabilities could yield the conclusion that Plaintiff must be forced nonetheless to walk or be
4 relegated to the use of a cane regardless of the distance of travel involved, the risk or the pain.

5       A party cannot create a genuine issue of material fact simply by making assertions in its
6 legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690
7 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying
8 the basis for the dispute. *Id.* "Although the burden on a party moving for summary judgment is
9 substantial, the burden on a party opposing a motion for summary judgment must not be
10 underestimated. On this point, at least four federal circuits have held that the summary judgment
11 is the 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what
12 evidence it has that would convince a trier of fact to accept its version of events." *Rush v. Denco*
13 *Enters.*, 857 F. Supp. 2d 969, 974 (C.D. Cal. 2012) (*rev'd on other grounds*, 593 Fed. Appx. 727
14 (2015). Defendants here merely assert that Plaintiff should simply walk, and that he does not
15 need a wheelchair. This is wholly inadequate to put this matter at issue.

16       Further, the Supreme Court has held that "[t]he mere existence of a scintilla of evidence
17 . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the
18 opposing party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Here, Defendants
19 have offered no such evidence; in fact, nearly all their evidence is inadmissible. Even if the
20 evidence were considered, it does not controvert that Plaintiff is substantially limited in his
21 ability to walk and that he uses a wheelchair for mobility so that he need not endure tremendous
22 pain or the risk of falling. Defendants have failed to create genuine issue of material fact.

23 **III.   There is absolutely no evidence that the High Speed Rail will in fact reach fruition,**
24       **and mere speculation is inadequate to establish mootness**

25       Defendants argue that the High Speed Rail Project *will*, at some unknown point in the
26 *future*, result in the condemnation of the Gas Station. Opp., Dkt. 53 at 11:17-21. In support of
27 this position, they offer the declaration of Arian Shiralian who testifies that he is in *negotiations*
28

1  to sell the property to the Project. Shiralian Decl., Dkt. 53-5, ¶ 3. No sale or condemnation has
2  happened, and there is no guarantee that such will ever happen.

3        Accepting Shiralian's testimony, at best there are merely "negotiations" regarding a
4  project which may or may not come to fruition. This is far too speculative to moot Plaintiff's
5  claim. Further, no evidence is even provided as to *when* this alleged sale and condemnation will
6  take place. If it ever takes place, it could take years, during which time Plaintiff would be suffer
7  injury by being denied full and equal access to the Gas Station. The fact is that the Gas Station
8  continues to operate, and Plaintiff's claim is therefore, by definition, not moot.

9        "A case becomes moot only when it is impossible for a court to grant any effectual relief
10 whatever to the prevailing party." *Knox v. SEIU, Local 1000*, 132 S. Ct. 2277, 2287 (2012)
11 (internal citations and quotations removed). Plaintiff has a continued interest in having the Gas
12 Station accessible to him. His claim is not moot. The fact that there is still relief that can be
13 granted to Plaintiff is sufficient to overcome any claim of mootness.

14 **IV.    Credibility attacks based only on testimony that no one remembers seeing Plaintiff**
15       **at the Gas Station are insufficient to dispute Plaintiff's testimony and evidence**

16       Defendants offer the testimony of employees who "do not remember" seeing Plaintiff at
17 the Gas Station: Arashk Jamaleddin, who does not testify that he even worked on the day of
18 Plaintiff's visit; Fabiola Gutierrez, who could not even remember if she was working on the
19 date of Plaintiff's visit or anything at all about that date, even when shown the receipt of
20 Plaintiff's visit with her name on it as the cashier (Suppl. Moore Decl., ¶ 11, Exh. F at 24:12-
21 28:19; 14:1-3 (excerpts from Fabiola Gutierrez's deposition)); and Brittany Ochoa, who
22 testified with certainty she was not even working for Defendants as of the date of Plaintiff's
23 visit, let alone on that date (Suppl. Moore Decl., ¶ 12, Exh. G at 12:1-14:3 (excerpts from
24 Brittany Ochoa deposition)) and whose sole testimony is that she does not remember anyone in
25 a wheelchair ever visiting Arco while she was working. Kharazi Decl., Exh. 11 (Dkt. 54-11).
26 Not remembering is not the same as it not happening, as many of us growing older will attest.

27       That these witnesses do not *remember* seeing Plaintiff during his April 2014 visit does
28 not create a disputed fact because it does not establish that Plaintiff was not there, nor

1  controvert Plaintiff's testimony and documentary evidence (receipt) that he was there.
2  Challenging Plaintiff's credibility does not create a triable issue of fact that would preclude
3  summary judgment. *Bodett v. CoxCom, Inc.,* 366 F.3d 736, 740 fn. 3 (9th Cir. 2004) ("A party
4  cannot create a dispute of fact simply by questioning the credibility of a witness."). In a Title III
5  ADA action, the Central District has extended this reasoning to claims that a Plaintiff did not
6  visit a public accommodation based upon testimony that employees "do not remember" seeing
7  the Plaintiff. "[T]he fact that Mr. Sofonio did not see Plaintiff personally on that date is not
8  sufficiently probative to discredit Plaintiff's testimony nor to dispute the fact that Plaintiff was
9  actually there." *Langer v. Adriatic Vacation Club, Inc.,* 2015 U.S. Dist. LEXIS 143398, at *11
10 n.4 (C.D. Cal. Oct. 21, 2015).

11 **V.    The allegations that there is a "scheme" to defraud the Court are without evidence
12        or merit, and are irrelevant to the determination of Plaintiff's motion**

13 "The Moore Law Firm Scheme" is nothing more than a series of unfounded *ad hominem*
14 attacks on Plaintiff and his counsel that have no place or relevance in this motion.

15 Sadly, Defendants' tactics are commonplace, as there exists "a troubling trend in which
16 disability access defendants attack the motives of plaintiffs and their counsel in nearly every
17 case brought to enforce the right to equal access guaranteed by the ADA and California
18 statutes." *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953, 958 (C.D. Cal. 2009). The
19 Ninth Circuit has recognized the importance of serial litigation to enforce the ADA: "[F]or the
20 ADA to yield its promise of equal access for the disabled, it may indeed be necessary and
21 desirable for committed individuals to bring serial litigation advancing the time when public
22 accommodations are compliant with the ADA." *Molski v. Evergreen Dynasty Corp.,* 500 F.3d
23 1047, 1062 (9th Cir. 2007). Defendants' efforts to suggest that Plaintiff's prior litigation history
24 reveals an improper motive cannot be accepted. "[W]e cannot agree that [Plaintiff's] past ADA
25 litigation was properly used to impugn her credibility."  *D'Lil v. Best W. Encina Lodge & Suites*,
26 538 F.3d 1031, 1040 (9th Cir. 2008).

27 But Defendants here have gone even further. Defendants have been actively involved in
28 reaching out to the Division of the State Architect ("DSA") to try to have Plaintiff's counsel's

son's Certified Access Specialist certification revoked. *See* Exh. 5 to Kharazi Decl., p. 1, ¶ 1 (responding to complaint by Mr. Shiralian). Defendants have advised the DSA that counsel's son is collaborating with Plaintiff's counsel to "target business owners for accessibility claims" for personal financial gain. *Id.* at p. 1, ¶ 2. Based upon Defendants' accusations, the DSA found wrongdoing and suspended counsel's son certification. *Id.* But these accusations are without merit. Defendants continue to spread this incredibly damaging claim *without a shred of evidence*. They have not taken the deposition of Plaintiff's counsel's son, they have not offered the testimony of a single individual to establish this conduct, they have not obtained any documents to support this baseless attack. Suppl. Moore Decl., ¶ 13. Nonetheless, at their insistence, Plaintiff's counsel's son's certification was suspended upon Defendants' mere allegation of wrongdoing, and is pending an administrative hearing. Suppl. Moore Decl., ¶ 14.

## VI. Plaintiff's allegations regarding the inaccessibility of the Gas Station are undisputed

Defendants never argue Plaintiff's extensive legal authority regarding the requirements for the Gas Station to be accessible. Only in their Response to the Statement of Undisputed Facts do Defendants address these claims, but only on the basis that 1) Plaintiff never visited the Gas Station, or 2) Plaintiff does not require a wheelchair. A review of Plaintiff's Reply to Defendants' Response, filed herewith, makes clear there are no real disputes as to the conditions which exist at the Gas Station and which Plaintiff encountered.

## VII. Conclusion

Because no genuine material issues of disputed facts exist, Plaintiff respectfully requests that his motion for summary judgment be granted in its entirety. To the extent any disputed issues are identified, Plaintiff respectfully requests that the Court adjudicate the non-disputed issues.

Dated:  January 12, 2016                              MOORE LAW FIRM, P.C.

*/s/ Tanya E. Moore*
Tanya E. Moore
Attorney for Plaintiff, Ronald Moore