1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RONALD MOORE,                                No. 1:14-cv-01402-DAD-SAB

12              Plaintiff,

13       v.                                       ORDER GRANTING IN PART AND
                                                  DENYING IN PART PLAINTIFF'S
14   MILLENIUM ACQUISITIONS, LLC, and             SUMMARY JUDGMENT MOTION
     TIMELESS INVESTMENTS, INC. dba
15   ARCO AM/PM #84176                            (Doc. Nos. 51, 53, 55)

16              Defendants.

17

18          This matter came before the court on January 19, 2016, for hearing of plaintiff's motion

19   for summary judgment.  Attorney Tanya E. Moore appeared on behalf of the plaintiff and

20   attorney Hadi Kharazi appeared on behalf of the defendant.  Oral argument was heard and

21   plaintiff's motion was taken under submission.

22          For the reasons set forth below, plaintiff's motion for summary judgment will be granted

23   in part and denied in part.

24                                      BACKGROUND

25          Plaintiff Ronald Moore is a California resident who has used a wheelchair for mobility

26   since 2005.  (Doc. No. 55-4 at 6.)  He commenced this action on September 9, 2014, pursuant to

27   Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 1218–12189 (ADA), the California

28                                             1

Unruh Civil Rights Act, Cal. Civ. Code § 51, (Unruh Act), and California Health & Safety Code § 19955, seeking an injunction under the ADA and $4,000 in statutory damages under the Unruh Act.  Plaintiff alleges accessibility violations at an ARCO AM/PM gas station located in Fresno, California, and has brought this motion seeking summary judgment in his favor.

LEGAL STANDARDS

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

On a motion for summary judgment, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may meet its burden by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id.* at 323.

If the moving party meets its burden, the burden then shifts to the non-moving party to demonstrate the existence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must show that the fact in contention is material, i.e., one that might affect the outcome of the suit under governing law, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The opposing party must also show that

1   the dispute is genuine, i.e. that the evidence provides grounds for a reasonable jury to return a

2   verdict for the non-moving party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436

3   (9th Cir. 1987).  In meeting this burden, the non-moving party may not rely upon the allegations

4   or denials of is pleadings, but is required to offer evidence of specific facts in the form of

5   affidavits, and/or admissible discovery material, in support of its contention.  *See* Fed. R. Civ. P.

6   56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  The non-moving party need not establish a material

7   issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to

8   require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec.*

9   *Serv.*, 809 F.2d at 631.

10      When evaluating the evidence to determine whether there is a genuine issue of fact, the

11   court draws "all reasonable inferences supported by the evidence in favor of the non-moving

12   party."  *Walls v. Central Costa County Transit Authority*, 653 F.3d 963, 966 (9th Cir. 2011).  The

13   opposing party "must do more than simply show that there is some metaphysical doubt as to the

14   material facts" in order to demonstrate a genuine issue.  *Matsushita*, 475 U.S. at 587 (citation

15   omitted).  It is the opposing party's obligation to produce a factual predicate from which the

16   inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45

17   (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  "Where the record taken as a whole

18   could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

19   for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

20      <u>ANALYSIS</u>

21      The ADA provides that no individual shall be discriminated against on the basis of

22   disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

23   or accommodations of any place of public accommodation by any person who owns, leases, or

24   operates a place of public accommodation.  42 U.S.C. § 12182(a).  Here, plaintiff's federal claim

25   arises under Title III of the ADA, which prohibits discrimination against disabled individuals in

26   any place of public accommodation.

27   /////

28   /////

3

1    To make out a prima facie case under Title III of the ADA, the plaintiff must show that (1)

2    he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns,

3    leases, or operates a place of public accommodation; and (3) the plaintiff was denied public

4    accommodations by the defendant because of his disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d

5    724, 730 (9th Cir. 2008) (citing 42 U.S.C. § 12182(a)–(b)); *see also Kohler v. Bed, Bath &*

6    *Beyond of California, LLC*, 780 F.3d 1260, 1263 (9th Cir. 2015).  One way that a plaintiff can

7    show denial of public accommodations is by establishing that a public facility was not properly

8    accessible to disabled persons.  For facilities built after January 26, 1993, a plaintiff can show

9    denial of public accommodations by demonstrating an encounter with an ADA-prohibited barrier

10   within the facility.  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) (en

11   banc); *see also Moore v. Dollar Tree Stores, Inc.,* 85 F. Supp.3d 1176, 1183 (E.D. Cal. 2015).

12   "In a case pursued under the ADFA, a court . . . 'may allow the prevailing party . . . a reasonable

13   attorney's fee.'"  *Jankey v. Poop Deck*, 537 F.3d 1122, 1129 (9th Cir. 2008).  *See also Oliver v.*

14   *Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) ("The ADA claim provides for attorneys'

15   fees and costs for prevailing plaintiffs[.]").

16   To make out a prima facie claim under California's Unruh Act, a disabled plaintiff can

17   demonstrate a violation of the ADA, or show that the relevant facility does not comply with the

18   California Code of Regulations (CBC).  *Pickern v. Best Western Timber Cove Lodge Marina*

19   *Resort*, No. CIV. S-00-1637 WBS DAD, 2002 WL 202442, at *8–9, 2002 U.S. Dist. LEXIS

20   1709, at *21 (E.D. Cal. Jan. 18, 2002); *see also Strong v. Walgreen Co.*, No. 09cv611 WQH

21   (WVG), 2013 WL 5592482, at *1 (S.D. Cal. Oct. 10, 2013).  Thus, a plaintiff with a valid ADA

22   claim also has a valid Unruh Act claim, and is entitled to an award of damages under state law.

23   *Molski*, 481 F.3d at 731; *Wilson v. Haria and Gorgri Corp.*, 479 F. Supp.2d. 1127, 1141 (E.D.

24   Cal. 2007)

25   Here, it is undisputed that the gas station in question was a place of public accommodation

26   and that it was built after 1993.  Defendants also make no arguments related to plaintiff's state

27   law claims in their opposing papers.  Instead, in opposing plaintiff's motion for summary

28   judgment, defendants advance only four arguments:  (1) plaintiff's ADA claim is moot due to

4

1   likely condemnation proceedings against the gas station property by the California High Speed

2   Rail Authority; (2) plaintiff's ADA claims are part of what defense counsel characterizes as a

3   "litigation scheme" rendering those claims invalid; (3) plaintiff has no standing to raise his claims

4   because he is not disabled within the meaning of the ADA; and (4) plaintiff was not denied public

5   accommodations because he did not enter the gas station facility in question.

6   **I.    Plaintiff's ADA Claims**

7           a.  **Mootness**

8           Under Article III of the Constitution, a federal court may only adjudicate actual, ongoing

9   cases or controversies. *Honig v. Doe*, 484 U.S. 305, 317 (1988); *Pitts v. Terrible Herbst, Inc.*,

10  653 F.3d 1081, 1086 (9th Cir. 2011).  Federal courts have no jurisdiction to decide moot cases,

11  and "are without power to decide questions that cannot affect the rights of litigants in the case

12  before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).

13          A case is moot if there it does not involve a live dispute. *Alvarez v. Smith*, 558 U.S. 87,

14  92 (2009); *Pitts*, 653 F.3d at 1086 ("A case becomes moot 'when the issues presented are no

15  longer 'live' or the parties lack a legally cognizable interest in the outcome' of the litigation.")

16  (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  Thus, "a dispute solely about the

17  meaning of law, abstracted from any concrete actual or threatened harm, falls outside the scope of

18  the constitutional words 'Cases' and 'Controversies.'" *Alvarez*, 558 U.S. at 92.  But a suit will

19  remain justiciable despite the prospect of imminent mootness. *See United States v. Sharpe*, 470

20  U.S. 675, 682 n.2 (1985) (declining to find a government's appeal from a decision reversing

21  criminal convictions to be moot, when there was a prospect of mootness if the fugitive defendants

22  were not recaptured).  The speculative possibility that a case will be rendered moot in the future is

23  thus not sufficient to demonstrate that a case is currently moot. *Buono v. Norton*, 371 F.3d 543,

24  545–546 (9th Cir. 2004) (finding a case justiciable when a mooting event "could take as long as

25  two years to complete").

26          Here, defendants argue that plaintiff's claims are moot because defendant is hoping to sell

27  the gas station and/or it may be the subject of condemnation proceedings and will likely be

28  destroyed.  (Doc. No. 53 at 7.)  In support of this assertion, defendants offer a declaration from a

1    manager of Millenium Acquisitions, LLC, who states merely that the company "is currently in

2    negotiations with the High Speed Rail Authority to sell the property," and that "closure of Arco

3    AM/PM is therefore imminent." (Doc. No. 53-5 at 2.) However, defendants have presented no

4    evidence that the gas station is currently closed and their counsel conceded at oral argument that

5    the gas station remains open for business. Defendants do not even offer evidence on summary

6    judgment regarding the stage of the alleged negotiations to sell the property or the expected date

7    of sale. Absent such evidence, defendants' assertions constitute mere speculations as to potential

8    mootness. Such speculation is clearly insufficient and does not raise a genuine issue of material

9    fact precluding summary judgment in favor of plaintiff.

10            b. **Plaintiff's Alleged "Litigation Scheme"**

11           Title III of the ADA provides that any person subjected to discrimination on the basis of

12   disability in violation of the act may institute a civil action for injunctive relief. *See* 28 C.F.R.

13   § 36.501(a) ("Any person who is being subjected to discrimination on the basis of disability in

14   violation of the Act or this part or who has reasonable grounds for believing that such person is

15   about to be subjected to discrimination in violation of section 303 of the Act or subpart D of this

16   part may institute a civil action for preventive relief, including an application for a permanent or

17   temporary injunction, restraining order, or other order."). The Ninth Circuit has recognized that

18   individuals may properly bring multiple complaints under the ADA against different places of

19   public accommodation, and that "it may indeed be necessary and desirable for committed

20   individuals to bring serial litigation" to advance statutory anti-discrimination goals. *Molski v.*

21   *Evergreen Dynasty Corp*, 500 F.3d 1047, 1062 (9th Cir. 2007). *See also D'Lil v. Best W. Encina*

22   *Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2007) ("we cannot agree that [plaintiff's] past

23   ADA litigation was properly used to impugn her credibility"); *Kohler v. Rednap, Inc*., 794

24   F.Supp.2d 1091, 1096 (C.D. Cal. 2011); *Moore v. Anaya*, No. 1:12-cv-00009-AWI-MJS, 2012

25   WL 1657205, at *2 (E.D. Cal. May 10, 2012). Furthermore, in the summary judgment context, it

26   has been recognized that a party cannot create a disputed issue of material fact by "simply

27   questioning the credibility of a witness." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 740 n.3 (9th Cir.

28   2004) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). *See also Allen v.*

1    *Republic Silver States Disposal, Inc.*, No. 2:10-CV-827 JCM (VCF), 2012 WL 458429, at *5 (D.

2    Nev. Feb. 10, 2012) ("Plaintiffs object to the content of the affidavits supporting defendant's

3    motion for summary judgment, calling them 'false and fabricated' or 'a bundle of lies' [but] have

4    not contradicted the substance of these affidavits through specific facts or evidence demonstrating

5    a genuine issue of fact[.]")

6            Defendants argue that plaintiff's claims are invalid because they are part of a serial ADA

7    litigation scheme.  Defendants make two assertions in this regard.  First, defendants contend that

8    plaintiff has an extensive litigation history, proffering a list of PACER search results featuring

9    cases filed by plaintiff's attorney.  (Doc. Nos. 53-1 at 10; 54-4.)  Second, defendants argue that

10   plaintiff's expert is unqualified, noting that the expert's California Certified Access Specialist

11   (CASp) certification has been suspended.  (Doc. No. 53-1 at 10–11.)  In support of this latter

12   contention defendants submit a copy of the expert's certification suspension notice.  (Doc. No.

13   54-5.)

14          Defendants' evidence concerning plaintiff's history of engaging in ADA litigation has

15   absolutely no bearing on the validity of plaintiff's accessibility claims presented in this action.

16   *Molski*, 500 F.3d at 1062; *D'Lil*, 538 F.3d at 1040; *see also Kohler*, 794 F.Supp.2d at 1096;

17   *Moore*, 2012 WL 1657205, at *2.  Moreover, defendants' attack on the qualifications of

18   plaintiff's witness does not rebut any evidence underlying plaintiff's claims or offered by plaintiff

19   in support of his motion for summary judgment.  Accordingly, defendants' arguments concerning

20   plaintiff's involvement in what defense counsel characterizes as a "litigation scheme" simply fail

21   to raise any genuine issues of material fact precluding the granting of summary judgment in favor

22   of plaintiff with respect to his claims presented in this action.

23          **c.   Standing**

24          To bring a claim under the ADA, a plaintiff must have Article III standing.  *Chapman*,

25   631 F.3d at 944; *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 837–38 (9th

26   Cir. 2007).  A plaintiff can show standing by demonstrating there is "injury in fact" and a causal

27   connection between the injury and the conduct alleged.  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034,

28   1039 (9th Cir. 2008); *Skaff*, 506 F.3d at 838.  To show injury in fact, a plaintiff must demonstrate

1   either that he is deterred from returning to a facility in violation of the ADA, or that he intends to

2   return to the noncompliant facility and is thus likely to re-encounter a discriminatory architectural

3   barrier.  *Skaff*, 506 F.3d at 838 & n.3; *Pickern*, 293 F.3d at 1138.  A plaintiff must also show how

4   those barriers relate to his own disability.  *Chapman*, 631 F.3d at 947 n.4 ("Of course, a 'barrier'

5   will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the

6   facility on account of his particular disability."); *Doran*, 524 F.3d at 1045 ("Because Doran

7   challenges only those barriers that affect his specific disability and therefore impinge on his

8   individual right to fully enjoy the 7–Eleven store, the case before us presents neither abstract

9   questions nor questions better answered by other governmental bodies.  In light of Doran's

10   personal desire to return to the 7–Eleven store and the deterrence imposed by the barriers within

11   the store, our intervention is necessary to protect the individual rights conferred on Doran by the

12   ADA."); *O'Campo v. Bed Bath & Beyond of California, LLC*, 610 Fed. App'x 706, 708 (9th Cir.

13   2015)[1] ("An ADA plaintiff has suffered an injury-in-fact when he encounters 'a barrier that

14   deprives him of full and equal enjoyment of the facility due to his particular disability.'  The

15   plaintiff must therefore show the 'necessar[y] link[ ] to the nature of his disability' to properly

16   plead standing."); *see generally Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (noting that

17   Article III standing requires that an injury affect a "plaintiff in a personal and individual way").

18   Once a plaintiff establishes standing under the ADA as to an encountered barrier, he may also sue

19   for injunctive relief as to unencountered barriers relating to his disability.  *Chapman*, 631 F.3d at

20   944; *Gray v. County of Kern*, No. 1:14-CV-00204-LJO-JLT, 2015 WL 7352302, at *9 (E.D. Cal.

21   Nov. 19, 2015) (stating that "as long as the plaintiff has encountered one barrier, he may seek

22   relief for unencountered barriers").

23        A plaintiff qualifies as disabled under the ADA if he demonstrates that:  (1) he has a

24   physical or mental impairment, (2) the impairment limits a major life activity, and (3) the

25   limitation upon that activity is substantial.  *Rohr v. Salt River Project Agricultural Improvement

26   and Power District*, 555 F.3d 850, 858 (9th Cir. 2009); *see also Coons v. Secretary of U.S.

27

28   [1]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1   *Department of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) (citing *Deppe v. United Airlines*, 217

2   F.3d 1262, 1265 (9th Cir. 2000)).  In enacting the ADA, Congress specifically provided that the

3   term "disability" should be construed broadly.  42 U.S.C. § 12102(4).  Legislative history also

4   indicates that "the question of whether an individual's impairment is a disability under the ADA

5   should not demand extensive analysis."  42 U.S.C. § 12101 Note, Findings and Purposes of ADA

6   Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008).

7          "Whether a person is disabled under the ADA is an 'individualized inquiry." *Thornton v.*

8   *McClatchy Newspapers, Inc.*, 261 F3d 789, 794 (9th Cir. 2001) (quoting *Sutton v. United Air*

9   *Lines, Inc.*, 527 U.S. 471, 483 (1999)).  However, a plaintiff who is unable to walk without the

10  use of a mobility aid such as a wheelchair or a cane is disabled within the meaning of the ADA.

11  *See Daubert v. Lindsay Unified School Dist.*, 760 F.3d 982, 984 (9th Cir. 2014); *Chapman*, 631

12  F.3d at 943 ("Chapman is unable to walk unassisted, and he requires the use of a motorized

13  wheelchair when traveling in public."); *O'Campo*, 610 Fed. App'x at 708; *Wilson*, 479 F.

14  Supp.2d at 1133 ("[G]iven that plaintiff is unable to walk without the use of a mobility aid (e.g.,

15  wheelchair or cane), there is no genuine dispute that he is disabled within the meaning of the

16  ADA.").  Of course, disability under the ADA does not require permanent incapacitation because

17  "[t]he Act addresses substantial limitations on major life activities, not utter inabilities." *Bragdon*

18  *v. Abbott*, 524 U.S. 624, 641 (1998) ("When significant limitations result from the impairment,

19  the definition is met even if the difficulties are not insurmountable."); *Humphrey v. Memorial*

20  *Hospitals Assoc.*, 239 F.3d 1128, 1135 (9th Cir. 2001) (reversing grant of defendant's summary

21  judgment motion and, relying on *Bragdon*, noting that "an individual who has a[n] impairment

22  that causes him to take inordinately more time than others to complete a major life activity is

23  substantially limited as to that activity under the ADA.").  Accordingly, an individual who can

24  /////

25  /////

26  /////

27  /////

28  /////

1    choose to walk with difficulty may well still be disabled under the ADA.[2]

2          In moving for summary judgment in his favor, plaintiff argues that the undisputed

3    evidence before the court establishes that he is disabled under the ADA because he suffers from

4    hydrocephalus (fluid buildup in the brain), degenerative disc disease, and chronic pain syndrome.

5    (Doc. No. 51-1 at 5–7.)  Plaintiff contends that the evidence also establishes that he uses a

6    wheelchair for mobility, and while physically capable of walking short distances, risks pain and

7    injury from falling when doing so.  (Id.)[3]  The evidence before the court on summary judgment

8    and relied upon by plaintiff with respect to his physical impairments consists of plaintiff's own

9    declaration, (Doc. No. 51-2 at 2–3); a letter from a doctor confirming his diagnosis of plaintiff's

10   conditions, (Doc. No. 51-3 at 4); a declaration from a doctor and medical expert confirming the

11   conditions from which plaintiff suffers and stating his opinion that plaintiff is disabled (Doc. No.

12   51-6 at 3–4); and a disabled persons placard issued to plaintiff by the California Department of

13   Motor Vehicles, (Doc. No. 51-3 at 6).

14         In opposing plaintiff's motion for summary judgment, defendants contest plaintiff's

15   disabled status under the ADA.  Defendants argue that plaintiff can walk for short distances, does

16   _____

17   [2]   As one judge of this court has observed in the summary judgment context:

18          The fact that defendant asserts that plaintiff was observed walking
             without the aid of a cane or wheelchair on one occasion is not
19          sufficient to create a genuine dispute regarding this issue. [citation
             omitted.]  Such an event would not negate the fact that plaintiff's
20          numerous medical conditions nevertheless constitute a substantial
             limitation on his ability to walk.  See 29 C.F.R. § 1630.2(j)
21          (defining substantial limitation as either a total inability to perform
             major life activity or a significant restriction on the same).

22   Wilson, 479 F. Supp.2d at 1133, n.6.

23

24   [3]  Plaintiff does not contend that he is completely unable to walk unassisted.  Rather, he explains
     in his declaration before the court on summary judgment that as a result of his medical conditions
25   he is substantially limited in his ability to walk.  (Doc. No. 51-2 at 3.)  According to plaintiff, due
     to pain, balance problems and the risk of falling, although "some days are better than others," he
26   "seldom" walks and relies upon a wheelchair and a cane for mobility.  (Id. at 3.)  Finally, plaintiff
     represents that he began using his wheelchair in around 2005 and "nearly always" relies on a
27   wheelchair when travelling in public due to pain and to avoid falling.  (Id. at 2–3.)  Defendants
     have not offered any evidence refuting these representations in plaintiff's declaration.
28

                                                   10

1   not have a prescription for a wheelchair, and owns a motorcycle.  (Doc. No. 53 at 9.)  In support

2   of their opposition on this issue, defendants offer the following evidence: video surveillance of

3   the plaintiff showing him occasionally standing and walking (Doc. No. 53-8 at 3); a property

4   declaration showing plaintiff's motorcycle ownership, (Doc. No. 54-12); and declarations from

5   private investigators and a prior doctor of the plaintiff, Dr. Miller.  (Doc. Nos. 53-7, 53-8.)

6   Specifically, in his declaration Dr. Miller refers to the plaintiff's wheelchair as an "appliance" and

7   explains "its use was not medically necessary."  (Doc. No. 53-7 at 2.)

8          Plaintiff disputes the admissibility of defendants' video surveillance, property declaration,

9   and statements from the private investigators and plaintiff's former doctor.  (Doc. No. 55.)

10  However, even assuming that all of defendants' evidence is admissible, none of that evidence is

11  sufficient to raise a disputed issue of material fact on the issue of whether plaintiff suffers from

12  physical impairments substantially impeding his ability to walk.  That is, even if all of

13  defendants' evidence on summary judgment is credited, the undisputed evidence before the court

14  is sufficient to establish that plaintiff's medical conditions substantially limit his ability to walk

15  and that he therefore primarily uses a wheelchair for mobility in order to avoid pain and the risk

16  of falling.  No more is required.

17         Defendants unpersuasively cite the decision in *O'Campo* in arguing that persons requiring

18  the use of a cane to walk are not disabled under the ADA.  However, the Ninth Circuit in

19  *O'Campo* did not suggest that was the case.  Rather, the court in *O'Campo* concluded that one

20  who required the use of cane to walk was disabled under the ADA, but only had standing to

21  challenge barriers related to their actual, particular disability.  *O'Campo*, 610 F. App'x. at 708.

22  Accordingly, the court concluded in that case that plaintiff's failure to allege his use of a

23  wheelchair in his complaint precluded him from challenging barriers encountered by wheelchair-

24  bound persons, and limited him to raising challenges to barriers encountered by those required to

25  use a cane.  *Id.*

26         Because plaintiff here has come forward with evidence establishing that he suffers from a

27  disability as defined by the ADA, and defendants have not offered evidence capable of refuting

28  that plaintiff is disabled under the ADA, no genuine issue of material fact remains as to whether

11

1  plaintiff qualifies as disabled.  Plaintiff is entitled to summary judgment in his favor as to that

2  issue.

3        **d.  <u>Architectural Barriers</u>**

4       In moving for summary judgment in his favor, plaintiff argues that he is entitled to an

5  injunction requiring the removal of all architectural barriers he encountered at defendants' gas

6  station.  A plaintiff bringing accessibility claims under the ADA shows an injury in fact by

7  showing that they have encountered an architectural barrier that deprives them of full and equal

8  enjoyment of the facility due to their disability.  *Chapman*, 631 F.3d at 945.

9       In their opposition, defendants reject the idea that plaintiff encountered architectural

10  barriers at the station on two grounds.  First, defendants contest that plaintiff ever visited the

11  facility.  (Doc. No. 53 at 5.)  Second, defendants contest the presence of some of the architectural

12  barriers alleged by plaintiff within the station.  (Doc. No. 53-1.)  Below, the court will begin by

13  addressing plaintiff's alleged visit to the station before turning to the specific barriers at issue.

14          **i.  <u>Plaintiff's Gas Station Visit</u>**

15       In moving for summary judgment, plaintiff has come forward with evidence that he

16  visited the gas station on April 6, 2014, and personally encountered barriers at that time.  (Doc.

17  Nos. 51-2 (declaration describing barriers encountered); 51-3 at 8 (dated receipt from the gas

18  station establishing plaintiff's visit)).

19       Nonetheless, defendants contest that plaintiff personally encountered architectural barriers

20  within the facility.  (Doc. No. 53-1 at 5.)  In support of their position, however, they merely offer

21  declarations and deposition testimony of their employees who purportedly worked on the day in

22  question and who testified that they do not ever recall seeing any disabled person inside the gas

23  station.  (Doc. Nos. 54-10 & 54-11; *see also* 53-6.)

24       On summary judgment plaintiff has offered sufficient affirmative evidence to meet his

25  burden as to both his visit to the gas station on the date in question and the barriers he

26  encountered.   The evidence offered by defendants, in which their employees testify merely that

27  they do not remember ever seeing a disabled person inside the station, are clearly insufficient to

28  raise a material issue of fact as to whether plaintiff in fact visited the gas station or encountered

1  barriers on the day in question. *See Langer v. Adriatic Vacation Club, Inc.*, EDCV 14-1459 JGB

2  (SPx), 2015 U.S. Dist. LEXIS 143398, at *4, n.4 (E.D. Cal. Oct. 21, 2015) (granting ADA

3  plaintiff's motion for summary judgment and noting "[d]efendant cites to the declaration of the

4  Villa's manager . . . as evidence that Plaintiff never actually visited the Villa on February 21,

5  2014. . . . However, the fact that [the manager] did not see Plaintiff personally on that date is not

6  sufficiently probative to discredit Plaintiff's testimony nor to dispute the fact that Plaintiff was

7  actually there.")

8                    **ii.  Barriers Within The Station**

9           An architectural barrier under the ADA is any element in a facility that does not meet or

10  exceed the requirements of the ADA Accessibility Guidelines (ADAAG). *See* 28 C.F.R.

11  § 36.406(a); 28 C.F.R. pt. 36, App. A; *Chapman*, 631 F.3d at 945. Promulgated by the Attorney

12  General to implement the ADA requirements, these guidelines establish "the technical structural

13  requirements of places of public accommodation." *Fortune v. Am. Multi-Cinema, Inc.*, 364 F.3d

14  1075, 1080–1081 (9th Cir. 2004). *See also Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016,

15  1018 (9th Cir. 2015); *Chapman*, 631 F.3d at 947 ("Because the ADAAG establishes the technical

16  standards required for "full and equal enjoyment," if a barrier violating these standards relates to

17  a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes

18  "discrimination" under the ADA.") Facilities built after January 26, 1993, must comply with new

19  construction standards identified in governing ADAAG regulations, regardless of whether

20  removal is readily achievable or not. 42 U.S.C. § 12183(a)(1); *see Antoninetti v. Chipotle*

21  *Mexican Grill, Inc.*, 643 F.3d 1165, 1171 (9th Cir. 2010); *Curtis v. Home Depot U.S.A., Inc.*,

22  No.1:13-CV-1151 AWI GSA, 2015 WL 351437, at *3 (E.D. Cal. Jan. 23, 2015). Governing

23  regulations for facilities constructed or altered before September 15, 2010, are the 1991 ADAAG.

24  28 C.F.R. § 36.406(a)(1).

25           ADAAG requirements are precise and inflexible. *Chapman*, 631 F.3d at 945. Facilities

26  must comply exactly with the technical specifications set forth in the ADAAG, and compliance

27  with the spirit of the law is not sufficient to preclude ADA violations. *Id*. (citing *Long v. Coast*

28  *Resorts, Inc.*, 267 F.2d 918, 923 (9th Cir. 2001)). "[T]he difference between compliance and

1    noncompliance with the standard [established in the ADA] is often a matter of inches."

2    *Chapman*, 631 F.3d at 945–46.

3        Here, plaintiff alleges that the gas station contains twenty architectural barriers in

4    violation of the ADA and based upon the evidence presented seeks summary judgment and

5    injunctive relief with respect to each.  (Doc. No. 51-1 at 19–27.)  While defendants do not directly

6    deny the existence of any of these architectural barriers, they do contests facts underlying eleven

7    such barriers alleged by the plaintiff.  (Doc. No. 53-1.)  Below, the court will address plaintiff's

8    motion for summary judgment with respect to each of the twenty alleged architectural barriers in

9    turn.

10                        **1.  Exterior Ramp**

11       Under ADAAG § 4.5.2, changes in level that are "between ¼ and ½ shall be beveled with

12   a slope no greater than 1:2."  28 C.F.R. pt. 36, App. A, § 4.5.2.

13       Plaintiff contends that the parking area of the station has a ramp that violates ADAAG

14   § 4.5.2.  In his complaint, plaintiff notes that the bottom portion of the ramp was uneven and

15   difficult to maneuver.  (Doc. No. 19 at 3.)  Most importantly, plaintiff has presented the

16   declaration of his access expert, along with supporting evidence, establishing that the ramp in

17   question creates a vertical change of 5/16 that is not beveled.  (Doc. Nos. 51-4 at 4; 51-5 at 7–9.)

18       While in conclusory fashion defendants characterize these facts as "disputed," they fail to

19   offer any evidence rebutting plaintiff's evidence or raising any question as to the measurements

20   made by plaintiff's expert.  (*See* Doc. No. 53-1 at 16.)  Accordingly, there is no genuine dispute

21   as to whether defendants' gas station violated the ADAAG in this regard.

22                        **2.  Parking Access Aisle**

23       The ADAAG requires that "[p]arking spaces and access aisles shall be level with surface

24   slopes not exceeding 1:50 (2%) in all directions."  28 C.F.R. pt. 36, App. A, § 4.6.3.

25       In this case plaintiff argues that the access aisle in the outdoor parking area of defendants'

26   gas station has a slope of 5.5% in violation of the ADAAG.  (Doc. No. 51-1 at 15–16.)  In support

27   of this contention on summary judgment, plaintiff offers his own declaration, as well as the

28   declaration of one expert and the deposition testimony of another expert, all attesting to a slope in

14

the parking access aisle of greater than 2%.  (Doc. Nos. 51-2; 51-4 at 5; 51-5 at 30; 51-10 at 51.)

Defendants oppose summary judgment, arguing only that material facts are in dispute because plaintiff's two cited experts differed as to the exact slope of the access aisle in question. (Doc. No. 53-1 at 8.)  The argument is unpersuasive because both experts agreed that the slope far exceeded 2%, the maximum slope allowed under the ADAAG.  Because defendants offer no evidence refuting plaintiff's evidence, there is no genuine dispute that the access aisle at defendants' gas station violates ADAAG § 4.6.3.

### 3.  **Outdoor Seating**

The ADAAG provides that five percent of seating must be accessible, and that wheelchair-accessible seating must allow knee space of twenty seven inches in height, thirty inches in width, and nineteen inches in depth.  28 C.F.R. pt. 36, App. A, §§ 5.1, 4.32.

Here, the plaintiff argues that there was no wheelchair-accessible seating in the gas station's outdoor seating area.  (Doc. No. 51-1 at 21.)  In moving for summary judgment on this issue, plaintiff has submitted declarations from himself and an expert witness, with photographs, establishing that the seating area appears as represented by plaintiff.  (Doc. Nos. 51-2 at 5; 51-8.) Defendants have come forward with no evidence challenging that put forward by the plaintiff. There is therefore no genuine dispute that defendants' outdoor area violated the ADAAG and under the undisputed facts plaintiff is entitled to summary judgment on this issue.

### 4.  **Transaction Counter Length**

Under ADAAG § 7.2, stores providing for sales to the public must have a portion of the transaction counter measuring at least thirty six inches.  28 C.F.R. pt. 36, App. A, § 7.2.

In his complaint, plaintiff alleges that "[a] properly configured accessible portion of the transaction counter" is not provided.  (Doc. No. 19 at 4.)  On summary judgment, plaintiff argues that he is entitled to summary judgment because the transaction counter in the south convenience store violates this ADAAG standard.  (Doc. No. 51-1 at 22.)  In support, plaintiff has come forward with a declaration from his access expert describing his measurement of the transaction counter in question as standing at only thirty-one inches, along with photographic evidence of the same.  (Doc. Nos. 51-4 at 6; 51-5 at 36.)

Defendants argue that plaintiff's factual claims concerning the transaction counter are disputed, but supports that assertion only by referring back to the evidence presented by plaintiff in support of his motion.  (Doc. No. 53-1 at 8.)  As a result, once again, there is no genuine dispute that the transaction counter in question violated ADAAG § 7.2.

### 5.  <u>Transaction Counter Floor Clearance</u>

ADAAG § 4.2.4.1 establishes a minimum clear floor space for wheelchairs of thirty inches by forty-eight inches.  28 C.F.R. pt. 36, App. A, § 4.2.4.1.

In his complaint plaintiff alleges that the gas station "lacks proper clear floor space for approach."  (Doc. No. 19 at 4.)  In moving for summary judgment, he argues that the floor clearance around the south convenience store transaction counter does not comply with ADAAG § 4.2.4.1.  In support of that claim on summary judgment, plaintiff offers the declarations of two expert witnesses.  (Doc. No. 51-1 at 22.)  In the first of those declarations, the access expert states that "a 30 x 48 in clear floor space at the transaction counter is . . . not provided," and the second expert notes in his declaration that "there is a lack of proper clear floor space for approach." (Doc. Nos. 51-4 at 6; 51-10 at 53.)  Defendants do not dispute plaintiff's facts.  (Doc. No. 53-1 at 8.)  Accordingly, there is no genuine dispute that the gas station is in violation of ADAAG § 4.2.4.1 with respect to the floor space clearance at the transaction counter.

### 6.  <u>Unsecured Carpets</u>

The ADAAG provides that any carpets or floor mats used on floor surfaces must be securely attached, with any exposed edges fastened to floor surfaces, and with trim along any exposed edges.  28 C.F.R. pt. 36, App. A, § 4.5.3.

In his complaint, plaintiff explains that floor mats throughout the facility were "not properly secured."  (Doc. Nos. 19 at 5.)  In moving for summary judgment on this claim, plaintiff argues that the carpeting throughout the inside of the gas station violated the ADAAG.  (Doc. No. 51-1 at 24.)  In support of this assertion, plaintiff has again come forward with evidence from two experts, one in the form of a declaration with supporting photos and the other through deposition testimony, establishing the presence of unsecured floor mats in both the north and south convenience stores at defendants' gas station.  (Doc. Nos. 51-4 at 7; 51-5 at 52–56; 51-10 at 56.)

16

Once again, defendants do not attempt to refute plaintiff's evidence.  (Doc. No. 53-1 at 9.)  Thus, there is no genuine dispute as to defendants' violation of ADAAG § 4.5.3.  Under the undisputed evidence before the court, plaintiff is entitled to summary judgment on this claim.

### 7.  **Restroom Door Operating Pressure**

ADAAG § 4.13.11(b) requires that interior hinged doors shall have a maximum operating pressure of five pounds.  28 C.F.R. pt. 36, App. A, § 4.13.11(b).

In his complaint, plaintiff alleges that the door to the restroom at defendants' gas station was "heavy and difficult for [p]laintiff to open."  (Doc. Nos. 19 at 3.)  He now moves for summary judgment arguing that the restroom doors of the north facility of the gas station violate the ADAAG standards.  (Doc. No. 51-1 at 20.)   In support of that motion plaintiff has presented evidence, in the form of his access expert's declaration, that the north convenience store bathroom door "requires approximately 10 pounds of pressure to operate."  (Doc. No. 51-4 at 5.)

Because defendants have failed to offer any evidence refuting plaintiff's evidence on this point or even suggesting their compliance with ADAAG § 4.13.11(b), there is no genuine dispute that defendants' gas station is in violation of this ADAAG provision.  (Doc. No. 53-1 at 5.)

### 8.  **Restroom Counter Height**

ADAAG § 4.19.2 states that lavatories shall be mounted with the rim or counter surface no higher than thirty four inches.  28 C.F.R. pt. 36, App. A, § 4.19.2.

In his complaint, plaintiff alleges that the "north convenience store men's restroom lavatory counter surface is too high."  (Doc. No. 19 at 5.)   In moving for summary judgment, plaintiff argues that the same counter surface violates the ADAAG.  (Doc. No. 51 at 26.)  In support of his motion plaintiff also offers the declaration of one expert, supported by photographic evidence, and the deposition testimony of another expert, both attesting to the fact that the counter height exceeds thirty four inches.  (Doc. Nos. 51-4 at 7; 51-5 at 68, 51-10 at 58.)

On this point defendants claim to dispute plaintiff's evidence concerning the bathroom counter height.  (Doc. No. 53-1 at 9–10.)  However, defendants offer no evidence whatsoever and merely refer back to the evidence offered by plaintiff that, if undisputed, establishes the violation.  As such, there is no genuine dispute as to defendants' violation of ADAAG § 4.19.2.

### 9.  Floor Clearance in Restroom

The ADAAG requires restroom stalls with floor mounted toilets to have a floor space of sixty inches along the wall behind the toilet, and fifty-nine inches from the back of the toilet to the front-facing wall.  28 C.F.R. pt. 36, App. A, § 4.17.3, Fig. 30(a).  The centerline of the toilet must also be located eighteen inches from the side wall.  *Id.*

In his complaint, plaintiff alleges a lack of clear floor space and improper toilet positioning in the south convenience store men's bathroom at the gas station.  (Doc. No. 19 at 5.) Plaintiff has moved for summary judgment arguing that these conditions in the men's restroom at the station's south convenience store violate the ADAAG.  (Doc. No. 51 at 25.)  In support, plaintiff has again offered evidence from two experts establishing the violation.  Specifically, plaintiff's evidence establishes that the relevant floor space measures 58 ¼ inches by 38 inches and the centerline of the toilet is 18 ½ inches or more from the side wall.  (Doc. Nos. 51-4 at 7; 51-10 at 56.)

Defendants have made no attempt to dispute plaintiff's evidence.  (Doc. No. 53-1 at 9–10.)  There is thus no genuine dispute that defendants' gas station in this respect is in violation of the ADAAG standards. Given the undisputed evidence, plaintiff is entitled to summary judgment.

### 10. Plumbing Insulation

ADAAG § 4.19.4 establishes that hot water and drain pipes under lavatories must be insulated or configured to protect against contact.  28 C.F.R. pt. 36, App. A, § 4.19.4.

Plaintiff's complaint alleges the absence of insulation in both men's restroom locations. (Doc. Nos. 19 at 5.)  In moving for summary judgment plaintiff asserts that the plumbing in both the north and south convenience store restrooms fails to comply with ADAAG specifications. (Doc. No. 51-1 at 24–26.)  Plaintiff has supported this claim by coming forward with evidence in the form of expert declaration and deposition testimony establishing the lack of required insulation in the gas station men's bathrooms.  (Doc. No. 51-4 at 7; 51-10 at 58.)

Defendants claim to dispute only the alleged absence of insulation in the north convenience store plumbing.  However, they do so not by presenting any contrary evidence, but

/////

1   rather by merely referring to plaintiff's own evidence.  (Doc. No. 53-1 at 10.)[4]  Because

2   defendants offer no evidence on this issue, there is no genuine dispute that the lack of insulation

3   on the plumbing in both the north and south convenience store men's restrooms violated the

4   ADAAG.

5   ### 11. <u>Urinal Positioning</u>

6        Under ADAAG § 4.18.2, urinals must be stall-type or wall-hung with an elongated rim at

7   a maximum of seventeen inches above the floor.  28 C.F.R. pt. 36, App. A, § 4.18.2.

8        Plaintiff alleges in his complaint that the urinal in the north convenience store of the gas

9   station is improperly positioned—specifically "positioned with its rim too high."  (Doc. Nos. 19

10  at 5–6.)  Plaintiff has come forward with evidence on summary judgment establishing that the rim

11  of the urinal measures at 17 ½ inches above the floor in violation of the ADAAG standard.  (Doc.

12  Nos. 51-4 at 8; 51-10 at 58.)

13       Because the defendants do not contest or dispute plaintiff's evidence in any way, there is

14  no genuine dispute that positioning of the urinal in the north convenience store do not comply

15  with the ADAAG requirements.  Under the undisputed evidence, plaintiff is entitled to summary

16  judgment.

17  ### 12. <u>Flush Valve Positioning</u>

18       ADAAG § 4.16.15 requires that controls for flush valves on toilets be mounted on the

19  wide side of toilet areas.  28 C.F.R. pt. 36, App. A, § 4.16.15.

20       Plaintiff alleges in his complaint that the flush valves in the men's restrooms at the gas

21  station are "not located on the open side of the toilet."  (Doc. No. 19 at 5–6.)  He moves for

22  summary judgment arguing that the flush valve positioning in the north and south convenience

23  stores violated the ADAAG.  (Doc. No. 51-1 at 25, 27.)  In support of his motion plaintiff has

24  presented evidence from his two experts confirming the flush valve violations.  (Doc. Nos. 51-4

25  at 8; 51-10 at 57.)

26  /////

27

28  _____
    [4]  The court finds this, as well as several other positions taken by defendants on summary
    judgment, to be perplexing.

Defendants have offered no evidence to the contrary.  Accordingly, there is no genuine dispute that the flush valves in the north and south convenience stores violate the ADAAG standards, and plaintiff is entitled to summary judgment.

### 13. __Height of Operable Parts__

The ADAAG establishes the maximum permitted height for accessible objects.  Height requirements depend on the amount of clear floor space around the object.  ADAAG § 4.2.5 applies when the floor space only allows for a forward wheelchair approach, whereas ADAAG § 4.2.6 applies when the floor space allows for a parallel wheelchair approach.  28 C.F.R. pt. 36, App. A, §§ 4.2.5, 4.2.6.  Under § 4.2.5, accessible objects must have a maximum height of 48 inches, and if there is a 20–25 inch obstruction, a maximum height of 44 inches.  28 C.F.R. pt. 36, App. A, § 4.2.5, Fig.5(b).  Under § 4.2.6, however, accessible objects must have a maximum height of 54 inches, or if there is an obstruction, 46 inches.  28 C.F.R. pt. 36, App. A, § 4.2.6, Fig. 6(b).

Here, plaintiff contends that six features of the defendants' gas station violate ADAAG § 4.2.5.  In his complaint, plaintiff alleges violations concerning (1)–(2) the self-service items at the north and south convenience stores; (3) public pay phone parts; (4)–(5) coat hooks in the south and north convenience store bathrooms; and (6) the faucet and soap dispenser in the north convenience store men's restroom.  (Doc. No. 19 at 4-6.)   In moving for summary judgment plaintiff has presented evidence, in the form of expert declarations or testimony, that self-service items at the gas station measure 50 and 50 ¾ inches in height, (Doc. Nos. 51-4 at 4; 51-10 at 54); public pay phones measure between 49 and 55 inches in height, (Doc. Nos. 51-4 at 5; 51-10 at 54); coat hooks in the south and north convenience stores measure 63 and 48 5/8 inches in height, (Doc. Nos. 51-4 at 7–8; 51-10 at 57 & 59); and that faucet and soap dispensers in the north convenience store restroom require one to reach over a 24 inch obstruction and measure 52 inches in height.  (Doc. No. 51-5 at 26–28.)  Defendants have offered no evidence at the summary judgment stage of this litigation to rebut or contest in any way plaintiff's evidence regarding the measurements set forth above.  (Doc. No. 53-1.)

/////

20

However, because plaintiff has presented no evidence that clear floor space in front of the areas where these various features appear allows only forward, rather than parallel approach (Doc. No. 51-12), he has failed to establish that ADAAG § 4.2.5's height maximum of 48 inches applies, rather than § 4.2.6's height maximum of 54 inches.  Nonetheless, it is also undisputed under the evidence before the court on summary judgment that two of the features within this group — (5) the coat hooks in the south convenience store, and (6) the faucet and soap dispensers in the north convenience store restroom — exceed even the higher 54 inch height maximum of ADAAG § 4.2.6.  Accordingly, under the undisputed evidence before the court, these two features violate ADAAG requirements regardless of whether § 4.2.5 or § 4.2.6 applies, and there is no genuine dispute that defendants' gas station was in violation of the ADAAG standards with respect to these features.

In contrast, four of the features within this group exceed § 4.2.5 height requirements but are within § 4.2.6 height requirements, i.e. the requirements established for objects accessible through parallel approach.  The four features which fall into this category are:  (1–2) the self-service items in the north and south convenience stores, (3) the public pay phone parts, and (4) the coat hooks in the north convenience store.  Because plaintiff has not come forward with evidence on summary judgment establishing that § 4.2.5, rather than § 4.2.6 applies to these four features, and because based upon plaintiff's evidence these features are in compliance with § 4.2.6, plaintiff has not met his burden on summary judgment to show a violation of the ADAAG with respect to those features.  He is therefore not entitled to summary judgment in his favor with respect to these four features.

## II.    Plaintiff's Unruh Act Claims

California's Unruh Civil Rights Act establishes protections for persons with disabilities that parallel those of the ADA.  The statute provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

1   Cal. Civ. Code § 51(b).  To demonstrate a violation of the Unruh Act, a plaintiff may show either

2   a violation of the ADA, or a violation of the CBC and discriminatory intent.  *Pickern*, 2002 WL

3   202442, at *8-9, 2002 U.S. Dist. LEXIS at *21; *see also Strong,* 2013 WL 5592482, at *1

4   ("Although a violation of the ADA constitutes a violation of the CDPA and the Unruh Act, the

5   Court noted that Plaintiff can alternatively prove a violation of the CDPA [California Disabled

6   Persons Act] and Unruh Act by demonstrating that Defendants violated the California Code of

7   Regulations, Title 24.").

8        The Unruh Act provides different remedies from those in the ADA.  A plaintiff who

9   prevails under an Unruh Act claim is entitled to injunctive relief, actual damages, and minimum

10   statutory damages of $4,000 for each occasion in which he was discriminated against.  Cal. Civ.

11   Code § 52(a); *Jankey v. Lee*, 55 Cal. 4th 1038, 1044 (2012); *Moore v. Dollar Tree Stores Inc.*, 85

12   F. Supp. 3d at 1183.  The plaintiff presenting an Unruh Act claim need not prove actual damages

13   to recover the independent statutory damages.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th

14   Cir. 2007); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000); *Moore v. Dollar*

15   *Tree Stores Inc.*, 85 F. Supp. 3d at 1183.  The Unruh Act also allows for the award of attorney's

16   fees.  Cal. Civ. Code § 52(a); *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d at 1183.

17        Here, plaintiff seeks summary judgment in his favor with respect to his claims under the

18   Unruh Act based on violations of both the ADA and the CBC.  The court addresses each below.

19        **a.    Unruh Act Claims Based on ADA Violations**

20        A plaintiff can make out a valid Unruh Act claim by showing a violation of the ADA.

21   *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 669 (2009).  Where an Unruh Act claim is premised

22   on a violation of the ADA, the plaintiff need not demonstrate intentional discrimination to

23   recover.  *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d at 1183 (citing *Munson*, 46 Cal. 4th at

24   669).

25        Plaintiff here argues that his ADA claims also constitute claims under the Unruh Act upon

26   which he is entitled to summary judgment as well.  Above, the court has found that based upon

27   the undisputed evidence, plaintiff is entitled to summary judgment in his favor as to sixteen of the

28   specific ADA violations he has alleged.  Accordingly, based upon the same showing, plaintiff is

1   also entitled to summary judgment in his favor as to his Unruh Act claims with respect to those

2   sixteen violations, and is entitled to statutory damages with regard to each.

3        **b.      Unruh Act Claims Based on CBC Violations**

4        A plaintiff can also make out an Unruh Act claim by showing a violation of the CBC

5   together with an intention to discriminate. *Munson*, 46 Cal. 4th at 668; *Moore v. Dollar Tree*

6   *Stores Inc.*, 85 F. Supp. 3d at 1183; *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1074 (N.D.

7   Cal. 2014) (noting "the several avenues by which a plaintiff can prevail on a disability

8   discrimination claim under the . . . Unruh Act.")  With respect to the intent requirement, the

9   California Supreme Court has held that Unruh Act violations require a showing of "willful,

10  affirmative misconduct," and that a plaintiff must demonstrate more than disparate impact of a

11  facially neutral policy on a particular group. *Greater Los Angeles Agency on Deafness, Inc. v.*

12  *Cable News Network, Inc.*, 742 F.3d 414, 425-26 (9th Cir. 2014) (citing *Koebke v. Bernardo*

13  *Heights Country Club*, 31 Cal. 4th 824, 853 (2005)); *see also Cullen v. Netflix, Inc.*, 880 F.

14  Supp2d 1017, 1024 (N.D. Cal. 2012).

15       Here plaintiff has brought three Unruh Act claims based on independent violations of the

16  CBC.  (Doc. No. 19 at 3.)  In particular, plaintiff argues now that he is entitled to summary

17  judgment with respect to his Unruh Act claims related to the door of the men's restroom in the

18  north convenience store, the operating pressure of the south convenience store entrance door, and

19  the positioning of the sink in the north convenience store men's restroom.  (Doc. Nos. 51-1 at

20  30–31; 51-12 at 13.)  However, in moving for summary judgment on these independent Unruh

21  Act claims plaintiff has come forward with no evidence that defendants acted with discriminatory

22  intent, or engaged in any willful, affirmative misconduct in connection with those violations.

23       Because plaintiff has not offered evidence of a discriminatory intent on the part of

24  defendants with respect to these independent Unruh Act claims, he has failed to satisfy his initial

25  burden of "affirmatively demonstrat[ing]e that no reasonable trier of fact could find other than for

26  the moving party." *Soremekun*, 509 F.3d at 984.  Accordingly, plaintiff is not entitled to

27  summary judgment with respect to those claims.

28  /////

1   CONCLUSION

2       For the reasons stated above, the court grants plaintiff's motion for summary judgment

3   (Doc. No. 51) in part and denied it in part.[5]  Specifically, the court rules as follows:

4       1.   The court GRANTS plaintiff's motion for summary judgment, as to the issues that

5           plaintiff is a disabled person under the ADA, that the defendants' gas station is a place of

6           public accommodation, and that plaintiff has personal knowledge of the identified

7           barriers.

8       2.   The court GRANTS plaintiff's motion for summary judgment as to violations of the

9           ADA, and grants injunctive relief, with respect to sixteen architectural features:  (1) the

10          outdoor ramp, (2) parking access aisle, (3) outdoor seating configuration, (4) south

11          convenience store counter, (5) south convenience store transaction counter floor area,

12          (6) carpeting, (7) north convenience store restroom door pressure, (8) north convenience

13          store restroom counter, (9) south convenience store restroom floor area, (10)–(11) north

14          and south convenience store insulation, (12) north convenience store urinal, (13)–(14)

15          south convenience store flush valves, (15) north convenience store faucet and soap

16          dispenser, and (16) south convenience store coat hooks;

17      3.   The court GRANTS plaintiff's motion for summary judgment as to claims under the

18          Unruh Act based on the aforementioned ADA violations, and awards statutory damages of

19          $ 4,000 as requested by plaintiff based upon his one visit to the gas station;

20  /////

21  /////

22  /////

23  _____

24  [5]  This action is currently set before the court for a Final Pretrial Conference on March 14, 2016
    at 3:30 p.m., with a Jury Trial scheduled for April 26, 2016 at 8:30 a.m. (Doc. No. 52.)  Although
25  the motion for summary judgment addressed by this order has been under submission, the parties
    have not filed a joint final pretrial statement.  (Doc. No. 13; Local Rule 281(a)(2).)  Of course, by
26  this order the court has granted judgment in favor of plaintiff as to most of his claims.  If the
    parties believe in light of this order that a status conference would be appropriate and that the
27  Final Pretrial Conference and Jury Trial dates should be vacated, they are directed to confer with
    Courtroom Deputy Renee Gaumnitz to determine an appropriate status conference date and to
28  submit a stipulation and proposed order.

24

4.  The court DENIES plaintiff's motion for summary judgment as to violations of the ADA, with respect to four architectural features: (1)–(2) operable parts in the north and south convenience stores, (3) public phone parts, and (4) the north convenience store coat hooks; and

5.  The court DENIES plaintiff's motion for summary judgment as to his independent Unruh Act claims based on CBC violations.

IT IS SO ORDERED.

Dated:   **March 3, 2016**

_____
UNITED STATES DISTRICT JUDGE